FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

2007 AUG 31  P 4: 16

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| IOTA XI CHAPTER OF<br>SIGMA CHI FRATERNITY,<br>George Mason University,<br><br>Ryan Duckwitz, Consul,<br>Iota Xi Chapter of<br>Sigma Chi Fraternity, and<br><br>Justin Pietro, Pro Consul,<br>Iota Xi Chapter of<br>Sigma Chi Fraternity<br><br>     Plaintiffs,<br><br>v.<br><br>GEORGE MASON UNIVERSITY,<br><br>Pamela Patterson, Associate Dean of<br>Students, individually and in her official<br>capacity,<br><br>Michele Guobadia, Associate Director<br>for Student Activities, Greek Life,<br>individually and in her official capacity,<br><br>Girard Mulherin, Dean of Students,<br>individually and in his official capacity,<br><br>Sandy Hubler, Vice President of<br>University Life, individually and in her<br>official capacity,<br><br>and<br><br>Alan G. Merten, President, individually<br>and in his official capacity, and<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.: 1:07cv883-LMB/TCB

## COMPLAINT

## PRELIMINARY STATEMENT AND JURISDICTION

1.       This is a civil action for declaratory and injunctive relief and money damages brought by the George Mason University chapter of an international fraternity, its Consul and Pro Consul, arising out of the University's abridgement of the plaintiffs' constitutional rights, as well as the University's breach of contract.  This action arises under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983, and common law principles of contract law.  The court is empowered to grant declaratory relief under 28 U.S.C. §2201.

2.       This court has jurisdiction pursuant to 28 U.S.C. § 1331.

3.       Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as all Defendants reside or may be found in this District and a substantial part of the events and omissions giving rise to the claims occurred in this District.

## PARTIES

4.       Plaintiff Iota Xi Chapter of the Sigma Chi Fraternity ("Sigma Chi" or "the Chapter") is an unincorporated association of approximately fifty-six students at George Mason University ("GMU" or "the University") in Fairfax, Virginia.  It sues here on its own behalf and also on behalf of its members, who are also students at the University. Sigma Chi is a highly selective organization that espouses and instills leadership skills, moral values, and character development.

5.       Plaintiff Ryan Duckwitz is a member of Sigma Chi and is the President (or "Consul") of the Chapter.

2

6.     Plaintiff Justin Pietro is a member of Sigma Chi and is the Vice President (or "Pro Consul") of the Chapter.

7.     Plaintiffs are referred to herein as "Sigma Chi" or the "Chapter."

8.     Defendant GMU is a public university maintained and funded in significant part by the Commonwealth of Virginia.  In its actions here at issue, GMU, while a state actor, was not fulfilling any governmental function and was acting, rather, as an educational institution.

9.     Defendant Pamela Patterson is, and at all relevant times was, Associate Dean of Students at GMU.  In her actions here at issue she was acting under the color of state law.

10.    Defendant Michele Guobadia is, and at all relevant times was, Associate Director for Student Activities, Greek Life at GMU.  In her actions here at issue she was acting under color of state law.

11.    Defendant Girard Mulherin was at all relevant times Dean of Students at GMU.  In his actions here at issue he was acting under color of state law.

12.    Defendant Sandy Hubler is, and at all relevant times was, Vice President of University Life at GMU.  In her actions here at issue she was acting under color of state law.

13.    Defendant Alan G. Merten is, and at all relevant times was, President of GMU.  In his actions here at issue, he was acting under color of state law.

## NATURE OF THE CASE

14.    This case arises out of a prolonged disciplinary process instituted and administered by the Defendants against Sigma Chi, during which the Defendants

3

conspired to violate and violated the Chapter's constitutional rights to free speech, free association, and procedural and substantive due process.

15.     The process was originally initiated by Defendant Guobadia in a letter dated August 22, 2005, wherein she notified Sigma Chi that GMU was placing the Chapter on interim suspension pending an investigation of several charges.  Because the charges lacked any factual investigation, the University dropped them shortly thereafter, following an investigation with which the Chapter cooperated completely and fully with GMU.

16.     Later during that same semester, GMU resurrected its disciplinary process against Sigma Chi by suspending the Chapter indefinitely, without any notice or opportunity to be heard, as a result of certain members and pledges of the Chapter exercising their rights to free expression and free association by engaging in dancing and singing a Sigma Chi song on the University's common grounds.

17.     Following GMU's unconstitutional suspension of Sigma Chi,  the members of the Chapter asserted their constitutional rights to free expression, free association, and due process against the University.

18.     Thereafter, the Defendants conspired and retaliated against the Chapter in a series of vindictive, unfounded, and unconstitutional actions, culminating in a ten-year suspension of the Chapter. During the course of GMU's disciplinary proceeding, the University and the individual defendants conspired to deprive Sigma Chi of these constitutional rights and protections in the following manners: disciplining the Chapter through an interim suspension without providing an opportunity to be heard; imposing an interim suspension without the authority to do so, and in violation of the University's

4

Judicial System for Student Conduct ("JSSC"); retaliating against the Chapter by creating

"violations" of the JSSC months and years after the alleged misconduct took place and

with the intent to use them solely against Sigma Chi; finding Sigma Chi in violation of

violations related to serving alcohol without any evidence that alcohol was consumed at a

Sigma Chi sponsored event; creating unconstitutionally vague and overbroad violations

in order to ensure a "conviction" against the Chapter; prosecuting Sigma Chi for

violations of the JSSC without providing any notice of the elements of the violation;

conducting a hearing in such an unfair manner so as to deprive Sigma Chi of any

meaningful opportunity to be heard and to ensure a "conviction" of the Chapter;

determining the outcome of the hearing prior to the hearing; prohibiting the Chapter from

cross-examining GMU witnesses and presenting witnesses and other evidence in its

defense; prohibiting the members of Sigma Chi, or other persons, from attending the

hearing so as to preclude the Chapter from having witnesses to the events at the hearing;

ruling in favor of the University and against the Chapter on important issues without

consideration of the merits; finding Sigma Chi "guilty" of misconduct based solely on

evidence of the Chapter engaging in lawful activity; finding Sigma Chi "guilty" of

misconduct without any factual evidence in support; intentionally ignoring and/or

misapplying the University's burden of proof by clear and convincing evidence, and

instead requiring the Chapter to prove their innocence; arbitrarily adjourning the hearing

before Sigma Chi could present all of its defense witnesses; failing to provide Sigma Chi

with an accurate record of the hearing in order to deny the Chapter a fair opportunity for

appellate administrative review; denying Sigma Chi a fair opportunity for an

administrative appeal by ignoring the record and applicable standards of review; and

5

failing to oversee the disciplinary process to ensure the Chapter's constitutional rights were protected and respected during the disciplinary process despite the Chapter's repeated attempts to assert those rights.

19.     The Defendants engaged in this conduct with the intent to deprive Sigma Chi of its constitutional rights and in order to ensure a suspension of the Chapter for reasons other than the alleged misconduct.

20.     This action seeks: a) to enjoin GMU from the continued imposition of the ten-year suspension; b) to enjoin GMU from engaging in future constitutional violations involving the Chapter; and c) an award of compensation for the damages inflicted on the Chapter.

## FACTS

### A.     The Original Charges Against Sigma Chi

21.     GMU's disciplinary process was originally initiated by Defendant Guobadia in a letter dated August 22, 2005, wherein she notified Sigma Chi that GMU was placing the Chapter on interim suspension pending an investigation of several charges.  The letter read, in pertinent part:

> It has come to the attention of the Office of Student Activities that the Iota Xi chapter of Sigma Chi Fraternity *has been and currently is involved in several illegal activities*.  There are allegations that the fraternity has been conducting an illegal membership education process that has resulted in hazing, hosted and/or sponsored 'parties' and/or social gathering [sic] that have violated Sigma Chi's national risk management policies and have played a role in the behavior that can be seen on www.case-race.com. [Emphasis added].

22.     On August 24, 2007, Defendant Mulherin sent a letter wherein he suspended university recognition of Sigma Chi pending the outcome of an investigation by the Greek Life Office.  In his letter, Defendant Mulherin described the charges against

6

Sigma Chi as "conduct that may be in violation of Virginia Statues [sic] regarding hazing

and underage drinking, as well as published University policies and regulations."

Defendant Mulherin cited Section XVII of the JSSC as the authority for issuing the

interim suspension.  Defendant Mulherin also stated that the "allegations, if true, describe

activities that certainly have a negative effect on the learning / teaching environment of

the University," as the grounds for his rendering the interim suspension.  Under the terms

of GMU's suspension, the Chapter was not allowed to "engage in any activity other than

weekly chapter meetings," and "any social event at which more than three members or

pledges of the fraternity are present" was "deemed an official event of Sigma Chi."

23.     On August 25, 2005, Defendant Mulherin sent a letter to Sigma Chi

notifying the Chapter that as an additional condition of the suspension, Sigma Chi must

have University approval to conduct a weekly chapter meeting, and the meeting must be

attended by either Defendant Guobadia or Sigma Chi's Chapter Advisor.  Defendant

Mulherin stated that he was requiring this additional condition "in order to expedite

conclusion of the investigation."  This condition had no effect on the timelines of the

University's investigation and was an arbitrary act by Defendant Mulherin to deny Sigma

Chi its constitutional rights.

24.     By letter dated September 6, 2005, Defendant Mulherin notified Sigma

Chi that he was "lifting the interim suspension" because of the "cooperative response

provided by the leadership and members of [the] fraternity in this matter."  Interestingly,

despite his acknowledgment of Sigma Chi's cooperation in the investigation, Defendant

Mulherin threatened the Chapter, and provided a foreshadowing of GMU's future

intentions against it, by stating:

7

We trust that the members of Sigma Chi recognize the need to act responsibly and within the law when alcohol is consumed at *gatherings that could be identified as fraternity related.* Needless to say, the University will respond to any violations and will not hesitate to take action that may include permanent exclusion of the offending organization from campus activities." [Emphasis added].

25. GMU later charged Sigma Chi with misconduct at a "gathering" that, although not a Sigma Chi sponsored event, the University determined "could be identified as fraternity related" on the basis that the event occurred at a house in which only three members lived.

26. At the time that Defendant Mulherin removed the initial interim suspension of Sigma Chi, he and the other Defendants intended to find a basis on which they could seek expulsion of Sigma Chi from the University campus, and conspired to do so, based solely on their unreasoned opinion that Sigma Chi "had done more harm than good."

27. GMU and Defendant Mulherin previously suspended Sigma Chi from the University for engaging in expressive activity. Sigma Chi filed an action seeking injunctive relief and seeking protection of Sigma Chi's rights to free expression. This Court found in favor of Sigma Chi, and the judgment was affirmed by the Fourth Circuit Court of Appeals.

**B.   GMU's "Hazing" Charges Against Sigma Chi**

28. On December 7, 2005, several Sigma Chi members and pledges broke out in song near the Fenwick Library on the GMU campus. Defendant Guobadia claims to have observed the singing and dancing through her office window, after which she immediately concluded that "hazing" of the pledges was occurring.

8

29.     Also on December 7, 2005, Assistant Dean Juliet Blank-Godlove reported to Defendant Guobadia her concern that Sigma Chi was preventing a student, who was a pledge of Sigma Chi, from going to his house to get an extra credit assignment.  On information and belief, Assistant Dean Blank-Godlove specifically reported to Defendant Guobadia that she did not have an opportunity to speak with the student about this incident in detail, and that her Peer Advisor had expressed the belief that "it's a fraternity thing."

30.     Based on the above information, Defendant Guobadia immediately issued an interim suspension of Sigma Chi as a University organization without providing any notice or hearing, and without any administrative authority to do so.  By letter dated the same day, Defendant Guobadia stated:

> "I am placing the Iota Xi Chapter of Sigma Chi fraternity on immediate interim suspension pending an investigation.  Interim suspension is noted by a period wherein all social and formal programming (this includes community service, all fundraising activities, and recruitment functions, etc.) is prohibited."

31.     Also on December 7, 2005, following Defendant Guobadia's imposition of the interim suspension on Sigma Chi, Defendant Guobadia was approached by a member of Sigma Chi who inquired about the basis for the hazing allegations.  Based on Ms. Guobadia's erroneous statement that the pledge had told Assistant Dean Blank-Godlove that the Chapter would not let him go retrieve the assignment, the Sigma Chi member told Defendant Guobadia that the student made a mistake in believing that he could not go home.  The Sigma Chi member also told Defendant Guobadia that he had been present for the singing and dancing in front of Fenwick Library, and that the pledges had undertaken this activity not only voluntarily, but also without any requirement from

the Chapter that they do so.  In fact, he reported that the members of Sigma Chi specifically told the pledges that they did not have to engage in the activity.

32.    Pursuant to § XVI of the JSSC, only the Dean of Students, Defendant Mulherin, possessed a very limited authority to place an organization on interim suspension, and even then only after a finding of "reasonable cause" to believe that it was necessary "to ensure the safety and/or education of other students, faculty and staff, or to protect the property or operations of the University from damage or interference."

33.    At the time that Defendant Guobadia imposed the interim suspension on Sigma Chi for "hazing," GMU did not have a definition of that term in the JSSC.  The Code of Virginia section making "hazing" unlawful defines "hazing" as "to recklessly or intentionally endanger the health or safety of a student or students or to inflict bodily injury on a student in connection with or for the purpose of initiation, admission into or affiliation with or as a condition for continued membership in a club, organization, fraternity, sorority, or student body regardless of whether the student or students so endangered or injured participated voluntarily in the relevant activity."  Va. Code Ann. §18.2-184.

34.    On or about December 8, 2005, Defendant Guobadia detailed the hazing allegations to Defendant Patterson in a memorandum.  In the memorandum Defendant Guobadia misreported allegations with regard to both hazing charges.  With regard to the singing and dancing "hazing" charge, Defendant Guobadia described the activity as marching and chanting.  With regard to the student being unable to go home, Defendant Guobadia erroneously reported that the student had told Assistant Dean Blank-Godlove

that "the assignment was at home and because of his pledging he was not allowed to go home and get it."

35.     Defendant Guobadia's memorandum also indicated that neither incident could have been considered "hazing" under the Virginia Code because it did not identify any conduct that endangered the health or safety of any student, or inflicted injury on a student. In addition, the member of Sigma Chi who spoke with Defendant Guobadia made it clear that the activity was not a condition of continued membership.

36.     On or about December 8, 2005, based on Defendant Guobadia's memorandum, Defendant Patterson sent a second letter to the Chapter. Defendant Patterson alleged that Sigma Chi was in violation of "Virginia Statues" [sic] regarding hazing and underage drinking. Defendant Patterson did not provide any details such as dates, times, or persons involved or an explanation as to why the University added the charge of "underage drinking." Defendant Patterson's letter likewise placed Sigma Chi on interim suspension "pending investigation by the Greek Life Office." Tellingly, Defendant Patterson "urged" members of Sigma Chi to "cooperate with the Greek Life Office and to recognize that their **behavior during this period of investigation can have a significant impact on the results."** [Emphasis added].

37.     On information and belief, the Greek Life Office never conducted an investigation into any of the allegations contained in Defendant Patterson's letter. Instead, the University placed Sigma Chi on indefinite suspension without providing an opportunity to be heard. Ultimately, GMU's interim suspension of Sigma Chi lasted for nearly six months, during which time the University failed to provide the Chapter with any opportunity to be heard.

11

38.     Defendant Patterson also placed the following conditions on Sigma Chi during the interim suspension:

> [E]ffective immediately, Sigma Chi may not engage *in any activity* other than weekly chapter meetings at which no alcohol may be present. For purposes of enforcement, *any social event* at which more than three members or pledges of the fraternity are present will be deemed an official event of Sigma Chi. [Emphasis added].

This condition, combined with GMU's indefinite suspension, prohibited members of Sigma Chi from associating with other members of the Chapter without any opportunity to protect their constitutional rights to do so.

39.     Like Defendant Guobadia, Defendant Patterson lacked the authority to place Sigma Chi on interim suspension. Further, no one at GMU made a finding of "reasonable cause" prior to placing the Chapter on interim suspension as required by the JSSC.

40.     Defendants Guobadia and Patterson knew at the time they made the hazing allegations that these charges had no basis in fact and were not violative of any Virginia statute or University rule.

41.     On information and belief, other Greek organizations at GMU have engaged in similar expressive conduct and have faced no disciplinary action.

42.     In or about August 2006, less than four months following the hearing at issue in this case, GMU amended its disciplinary rules. Upon information and belief, GMU implemented the August 2006 amendments in direct response to the issues raised by Sigma Chi throughout the contrived disciplinary process outlined herein. For example, GMU defined "hazing" for the first time, and the definition was significantly broader than the Virginia statute governing hazing at educational institutions.

**C.    GMU's Retaliatory Actions and Charges Against Sigma Chi**

43.     In December 2005, January 2006, and February 2006, Sigma Chi, through

its officers, repeatedly attempted to determine the nature of the charges, including regular

written and face-to-face communications with Defendants Guobadia, Patterson and

Mulherin (referred to collectively herein as the "GMU Administrators"). In addition, the

Chapter also questioned the constitutionality of the University's interim suspension.

44.     In response to the Chapter's protests, GMU leveled additional charges

against Sigma Chi despite the fact that the Chapter had not engaged in any misconduct

during this time period.

45.     On February 23, 2006, GMU presented a new list of charges against

Sigma Chi, which read as follows:

> Underage drinking
> Providing alcohol to minors
> Hazing;
> Sexual assault/s

46.     On March 8, 2006, Sigma Chi requested in writing that GMU set forth the

specific nature of each of the charges.

47.     On March 27, 2006, again without any intervening events, the University

sent the Chapter another expanded list of charges that read as follows:

> Hazing – 8:30 a.m. on December 7, 2005 in the area of Fenwick Library on the
> George Mason Campus.
> Providing alcohol to minors – September 7, 2005.
> Underage consumption of alcohol – September 7, 2005
> Sponsoring a party under conditions that resulted in sexual assault/s on a female
> guest. February 26, 2005 and September 7, 2005.

48.     The March 27, 2006 list of charges was the first notice given to Sigma Chi

of the dates of the alleged offenses, and that the additional charges all occurred prior to

the onset of the interim suspension.  Moreover, with regard to the sexual assault charges, which were alleged to have occurred thirteen months and nearly seven months before these charges were brought, GMU had already concluded both sets of disciplinary proceedings against the students alleged to have committed the sexual assaults.  Sigma Chi, as an organization, was not a party to, nor had any notice of, the sexual assault charges.

49.     On April 5, 2006, Sigma Chi sent a letter to Defendant Merten requesting that he investigate the GMU Administrators' constitutional violations during the course of the disciplinary process.  Upon information and belief, Defendant Merten took no action with regard to the Chapter's request, nor did he advise, train, or otherwise supervise the GMU Administrators or potential members of the Hearing Panel.

### D.     "Sponsoring a Party Under Conditions that Resulted in Sexual Assault"

50.     On February 25, 2005, the Alpha Omicron Pi Sorority Chapter at GMU ("Alpha Omicron Pi") held a "bid party" to honor new sorority members.  Two days after the party, one of the sorority members who was an organizer of the party accused an attendee of the party of sexual assault.  Upon information and belief, GMU brought disciplinary proceedings for the alleged sexual assault.  Sigma Chi was not charged with any misconduct in those proceedings and was never given notice or opportunity to participate in those proceedings.

51.     On September 7, 2005, a party took place.  Following that party, a female GMU student claimed that an attendee of the party had sexually assaulted her during the party.  Upon information and belief, GMU brought disciplinary proceedings for the alleged sexual assault.  Sigma Chi was not charged with any misconduct in those

proceedings and was never given notice or opportunity to participate in those proceedings.

52.     To support its charges for "sponsoring a party under conditions that led to sexual assault/s," GMU alleged that the February 25, 2005 and September 7, 2005 off-campus parties were "sponsored" by Sigma Chi.

53.     There is no law, regulation, rule, or policy which prohibits or even defines the charge of "sponsoring a party under conditions that resulted in sexual assault/s on a female guest."  On information and belief, the charge of "sponsoring a party under conditions that resulted in sexual assault/s on a female guest" has never been codified, defined, or leveled against any other student organization in the history of GMU. Instead, the University created this charge solely for use against Sigma Chi, and in response to the Chapter's attempts to protect its constitutional rights and protections.

54.     The University did not charge Sigma Chi with "sponsoring a party under conditions that resulted in a sexual assault/s on a female guest" until thirteen months after the alleged incident in one case, and nearly seven months after the alleged incident in the other.  The University also did not raise the charge for the alleged incident that occurred in February 25, 2005 during its first suspension of Sigma Chi in August and September of that same year, although Defendant Mulherin alluded to it in the September 6, 2005 letter that admonished Sigma Chi to act responsibly "when alcohol is consumed at gatherings that could be identified as fraternity-related."

### E.     Other Unconstitutional Actions by GMU

55.     During the hearing that occurred on May 4, 2006, GMU violated nearly all of its applicable rules and regulations in order to achieve a conviction against Sigma Chi.

These University rules and regulations were designed to provide Due Process protections to GMU students and organizations.

56.     The University violated the JSSC and Sigma Chi's Due Process rights in the following particulars:

a.      The GMU Administrators prohibited Sigma Chi from transcribing the proceedings even though Sigma Chi brought a duly certified stenographer to the hearing at its own expense.

b.      GMU and the Hearing Panel barred all Sigma Chi members, with the exception of the Chapter President, from attending the hearing.

c.      GMU and the Hearing Panel prohibited Sigma Chi's Advisor and legal counsel, whose presence was permitted by GMU's rules, from speaking upon threat of being barred from the hearing.

d.      In contrast, GMU had numerous administrators plus legal counsel in attendance on its behalf at the hearing.

e.      Upon information and belief, the GMU Administrators met privately with all three hearing panel members prior to the hearing to discuss the nature, substance and procedure for the hearing.

f.      The GMU Administrators shared the same legal counsel with the Hearing Panel during the proceedings.

g.      At the hearing, GMU called both sexual assault accusers and elicited testimony from them that they were sexually assaulted.  After specifically questioning them about the facts surrounding the sexual assaults, Defendant Mulherin requested, and

the Hearing Panel agreed, to bar all cross-examination of the witnesses on the subject of
the sexual assaults.

h.      At the hearing, Defendant Mulherin requested, and the Hearing Panel
agreed, that the sexual assaults be deemed to have occurred as a matter of conclusive fact,
based on the prior proceedings that did not include Sigma Chi.

i.      Sigma Chi was not allowed to introduce testimony of witnesses that would
have refuted or discredited the claims of sexual assault.

j.      With respect to the hazing charges, Sigma Chi began calling all
participants in the alleged hazing incident as witnesses to testify that there was no hazing,
that no one from GMU ever contacted them about the events of December 7, 2005, that
they were not harmed physically, mentally or emotionally, that their actions were
completely voluntary, and that they were just having fun expressing themselves. After a
few Sigma Chi members testified, the Hearing Panel, at the request of Defendant
Mulherin, prevented any additional witnesses from being called and adjourned the
hearing.

k.      Upon information and belief, the hearing was prematurely adjourned
because a retirement party for Defendant Mulherin was scheduled to begin at 5:00 p.m.

l.      During the course of the hearing, the Hearing Panel repeatedly made
decisions against Sigma Chi without considering the merits of the arguments and the
fairness to the Chapter. Instead, the Hearing Panel routinely parroted the exact language
of Defendant Mulherin's objections and arguments in its rulings against the Chapter.

57.      Although the JSSC required the University to prove each of the charges by
clear and convincing evidence, the Hearing Panel found the Chapter guilty of hazing

17

without any factual evidence supporting either charge of hazing. Instead, the only evidence presented at the hearing was unfounded opinion evidence of Defendants Guobadia and Patterson as to whether hazing had occurred.

58.    With regard to the charges of "sponsoring a party under conditions that led to sexual assault/s," the Hearing Panel found the Chapter guilty of both charges despite (1) the University's failure to present evidence that Sigma Chi sponsored either party at which the alleged sexual assaults occurred, (2) prohibiting the Chapter from presenting evidence that neither sexual assault occurred based on the University's irrebuttable conclusion that the assaults had occurred as a matter of fact, and (3) the University's failure to present any evidence that Sigma Chi served or otherwise provided alcohol at either event.

59.    The only evidence presented regarding the "conditions that led to sexual assault/s" was that alcohol was served at the events, which is lawful activity. In fact, during argument at the hearing, Defendant Mulherin, acting as prosecutor for the University, conclusively stated "everybody knows that alcohol and sexual assault go hand in hand."

60.    The Hearing Panel found against Sigma Chi on the charges of "sponsoring a party under conditions that led to sexual assault/s", hazing, and providing alcohol to underage persons. However, the Hearing Panel did not issue findings of fact, conclusions of law, or any other details surrounding their decision, as required by the JSSC, thus depriving Sigma Chi of a meaningful opportunity to appeal the decision of the panel.

**F.      GMU's Violations of Sigma Chi's Constitutional Rights Following the Hearing**

61.      Following the hearing, Sigma Chi was notified by Defendant Patterson by letter dated May 8, 2006 that GMU had suspended the Chapter for a period of ten years. Defendant Patterson's letter did not provide any findings of fact, conclusions of law, or any other details surrounding the decision rendered by the Hearing Panel.

62.      Section XIX of the JSSC states the following regarding the University's Appeals Procedures:

> The broad purpose of the variety of hearing bodies and the provision for appellate review is to insure [sic] all parties that the original findings of fact, the reasoned integration of them, and all opinion and imposition of sanctions or other solutions directed by the hearing body are sound enough to withstand the scrutiny of an impartial review. The extent of review is determined by the seriousness of the issue and the character of the sanction imposed.

63.      Sigma Chi filed a timely appeal of the decision of the Hearing Panel to Defendant Hubler as required under the JSSC.

64.      Among the grounds for appeal in the JSSC are "substantial procedural irregularities," and "violation of the standards of fairness used in disciplinary proceedings."

65.      Despite the overwhelming number of procedural violations by the University before and during the disciplinary hearing, all of which were presented to Defendant Hubler, she summarily denied the Chapter's appeal.

66.      In her letter of June 2, 2006 denying the Chapter's appeal, Defendant Hubler stated her basis for denying the appeal as follows: "It is my judgment that you failed to … identify a defect in the proceedings or specify a standard of fairness that was abridged."

67.     Defendant Hubler also stated in her June 2, 2006 letter that "[t]he *judgment of this community* is that Sigma Chi Fraternity, while possibly engaging in some positive work, *has caused more harm than good*." [Emphasis added].

68.     The ten year suspension is excessive, disproportionate, and arose from repeated constitutional violations by GMU, the GMU Administrators, the Hearing Panel and Defendant Merten.  It punishes Sigma Chi members who joined the fraternity after the events in question but before any notice was given of the alleged infractions.  It also punishes future potential members of Sigma Chi who have yet to join the Chapter, but who could not possibly have participated in any wrongdoing.

69.     As a practical matter, the ten-year suspension equates to an expulsion of the Sigma Chi organization at GMU.  As time goes by, existing Sigma Chi members will graduate from GMU and leave the fraternity in the normal course of events.  Meanwhile, the overly broad punishment prohibits Sigma Chi from recruiting new members to replace the graduates.

## G.      Exhaustion of Administrative Remedies

70.     Sigma Chi has exhausted all of its administrative remedies.  Following its imposition, Sigma Chi appealed the ten year suspension via a five-page appeal carefully documented with numerous exhibits.  The appeal outlined twelve defects that required the charges to be dismissed or dropped.  In a one-page letter dated June 2, 2006, Defendant Hubler denied the appeal without addressing any of the twelve defects in the proceedings.

20

## COUNT I
### Violation of Fourteenth Amendment
### Procedural and Substantive Due Process Rights under 42 U.S.C. §§ 1983
### (All Defendants)

71.     The Chapter hereby incorporates paragraphs 1-70 above as if fully restated herein.

72.     Defendants denied Sigma Chi due process by prohibiting Sigma Chi from exercising its liberty interest in free association.

73.     Defendants further denied Sigma Chi due process by failing to provide meaningful notice and opportunity to be heard on the disciplinary charges brought against the Chapter.

74.     As a direct and proximate result of the violations of Sigma Chi's Fourteenth Amendment rights to due process, Sigma Chi has suffered and will continue to suffer substantial damages.  These damages include an imminent extinction of the Chapter at GMU, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress, litigation expenses including attorney fees, and other compensatory damages.

## COUNT II
### Breach of Contract
### (Defendants GMU, Patterson, Hubler, Guobadia, Mulherin, Merten)

75.     The Chapter hereby incorporates paragraphs 1-74 as if fully restated herein.

76.     The Chapter, including each and every individual member, and Defendants GMU, Patterson, Hubler, Guobadia, Mulherin and Merten (the "Contract Defendants"), entered into a contractual relationship in which Sigma Chi and its members agreed to pay tuition and fees and otherwise observe the rules and regulations of GMU.

The Contract Defendants agreed to provide an education, to abide by the rules and regulations of GMU and to afford Sigma Chi and its members all of the privileges and rights of being a student or organization at GMU.

77.     Among other things, the Contract Defendants agreed to abide by a set of rules known as the JSSC.

78.     The JSSC provides in pertinent part:

The following standards of fairness and student rights are guaranteed to a student in any university disciplinary proceeding:

a.      "The right to prompt, written notice of charges and reasonable access to any written testimony that may be used at a hearing."

b.      "The right to examine witnesses against the student and to produce evidence on his/her behalf."

c.      "The right to a decision based on clear and convincing evidence."

d.      "The right to a public hearing unless the hearing body determines that a public hearing would unduly and adversely affect the proceedings or interest of others.  A public hearing is defined as one where spectators approved by the involved parties or the university may be present."

e.      "The right to appeal decisions to a higher authority or hearing body within the administrative channels provided by the George Mason University Judicial System."

f.      "The right to have his/her case processed without prejudicial delay."

79.     Sigma Chi has performed all of its obligations under the contract.

80. The Contract Defendants, by the actions alleged herein, breached the contract and have caused damage to Sigma Chi. These damages include an imminent extinction of the Chapter at GMU, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress, litigation expenses including attorney fees, and other compensatory damages.

**COUNT III**
**Violation of First Amendment Rights**
**to Free Speech and Association Pursuant to 42 U.S.C. §§ 1983**
**(All Defendants)**

81. The Chapter hereby incorporates paragraphs 1-80 as if fully restated herein.

82. By retaliating against plaintiffs for having participated in, or having been members of an organization which participated in, expressive conduct that was lawful, peaceful, and protected by the First Amendment, Defendants violated Sigma Chi's rights to free speech.

83. By prohibiting three or more Sigma Chi members from gathering anywhere, anytime and for any purpose, Defendants violated Sigma Chi's members' rights to free association.

84. By suspending Sigma Chi as an organization for engaging in protected speech and other expressive activity and as a result of a constitutionally flawed process, Defendants violated, and are continuing to violate, Sigma Chi's rights to free speech, assembly and association.

85. As a direct and proximate result of the violations of Sigma Chi's First Amendment rights to free speech, assembly and association, Sigma Chi has suffered and will continue to suffer substantial damages. These damages include an imminent

extinction of the Chapter at GMU, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress, litigation expenses including attorney fees, and other compensatory damages.

**COUNT IV**
**Violation of Fourteenth Amendment**
**Right to Equal Protection Under the Laws Pursuant to 42 U.S.C. §§ 1983**
**(All Defendants)**

86.     The Chapter hereby incorporates paragraphs 1-85 above as if fully restated herein.

87.     Defendants violated Sigma Chi's rights to equal protection under the laws by subjecting Sigma Chi to disparate treatment.  Among other things, Defendants disciplined Sigma Chi for actions that, upon information and belief, other organizations have engaged in without any interference or punishment by GMU.

88.     As a direct and proximate result of the violations of Sigma Chi's Fourteenth Amendment right to equal protection under the laws, Sigma Chi has suffered and will continue to suffer substantial damages.  These damages include an imminent extinction of the Chapter at GMU, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress, litigation expenses including attorney fees, and other compensatory damages.

**COUNT V**
**Supervisory Liability Pursuant to 42 U.S.C. §§ 1983**
**(Defendant Merten)**

89.     The Chapter hereby incorporates paragraphs 1-88 above as if fully restated herein.

90.     The GMU Administrators repeatedly violated Sigma Chi's constitutional and contractual rights.

24

91.     Defendant Merten had knowledge of the failure of the GMU Administrators to abide by constitutional and contractual requirements not only during the disciplinary process against Sigma Chi, but also in other disciplinary matters at GMU prior thereto.

92.     Defendant Merten failed to properly train, instruct, manage or otherwise supervise the GMU Administrators and the Hearing Panel.

93.     As a direct and proximate result of Defendant Merten's failure to supervise, Sigma Chi has suffered and will continue to suffer substantial damages.  These damages include an imminent extinction of the Chapter at GMU, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress, litigation expenses including attorney fees, and other compensatory damages.

**COUNT VI**
**Conspiracy Pursuant to 42 U.S.C. § 1983**
**(Defendants Patterson, Mulherin,**
**Guobadia, Hubler, Merten)**

94.     The Chapter hereby incorporates paragraphs 1-93 above as if fully restated herein.

95.     Upon information and belief, Defendants Patterson, Mulherin, Guobadia, Hubler, and Merten (the "Conspiracy Defendants") conspired to deprive Sigma Chi of its constitutional and contractual rights.

96.     Upon information and belief, the Conspiracy Defendants regularly communicated with each other throughout the disciplinary process against Sigma Chi in an effort to ensure that the outcome of the disciplinary proceedings was either a significant suspension or expulsion of the Chapter.

25

97.     Upon information and belief, the Conspiracy Defendants met with each other and with the Hearing Panel prior to the hearing to discuss the nature, substance and procedure for the hearing so that Sigma Chi would be deprived of any meaningful opportunity to defend itself during the hearing.

98.     As a direct and proximate result of the Conspiracy Defendant's actions, Sigma Chi has suffered and will continue to suffer substantial damages.  These damages include an imminent extinction of the Chapter at GMU, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress, litigation expenses including attorney fees, and other compensatory damages.

### PRAYER FOR RELIEF

WHEREFORE, the Chapter requests judgment against the Defendants as follows:

A.     For appropriate declaratory relief, including the reinstatement of the Iota Xi Chapter of the Sigma Chi Fraternity as a recognized organization of George Mason University;

B.     For monetary damages in an amount to be determined at trial;

C.     For appropriate equitable relief, including the enjoining and permanent restraint of the constitutional and contractual violations outlined herein, an injunction barring Defendants and those acting in concert with them from engaging in any form of retaliation or reprisal against the Chapter and its past, current and future members, and to take such action as is necessary to ensure that the effects of the unconstitutional and unlawful practices are eliminated and do not continue to affect the Chapter's constitutional rights;

26

D.    For an award of reasonable attorney's fees and costs incurred on Sigma Chi's behalf against all Defendants; and

E.    For all other relief as this Court deems just and proper.

Respectfully submitted,

IOTA XI CHAPTER OF THE SIGMA CHI FRATERNITY
RYAN DUCKWITZ
JUSTIN PIETRO

By Counsel

Tamara L. Tucker (VSB No. 39805)
NELSON & TUCKER, PLC
600 Peter Jefferson Parkway
Suite 100
Charlottesville, VA 22911
434-979-0049
434-979-0037 facsimile
*tamara.tucker@nelsontucker.com*

27